IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA

v.

JOSE ALFREDO CASTILLO-PEREZ
*also known as* ESEQUIEL CASTILLO-
PEREZ[1]

1:26CR72-1

## **ORDER AND MEMORANDUM OPINION**

On March 30, 2026, Defendant Castillo-Perez was indicted by a Grand Jury on the charge of knowingly being an illegal alien and possessing in and affecting commerce firearms, in violation of 18 U.S.C. §§ 922(g)(5), 924(a)(8). Castillo-Perez was arrested and the case came before the Court for an initial appearance, at which time the United States made an oral motion for detention.

On April 16, 2026, the Court held a hearing on the United States's motion for detention, pursuant to 18 U.S.C. § 3142(f)(2)(A). At the end of the hearing, the Court ordered further briefing on the issue of whether an immigration detainer, in-and-of itself, can create a "risk of nonappearance," 18 U.S.C. 3142(e)(1), sufficient to require detention. The parties briefed the issue, Docket Entries 11, 12, and it is now ripe for resolution.

---

[1] At the defendant's initial appearance, counsel advised the Court that his true name is Esequiel Castillo-Perez.

I. BACKGROUND

Before the hearing, a United States Probation Officer prepared a Pretrial Services Report ("Report") regarding Castillo-Perez's history, residence, family ties, employment history, financial resources, and prior criminal record. Both parties had an opportunity to review the Report before the hearing. Castillo-Perez, through counsel, objected to a portion of the Report that said Castillo-Perez was removed from the United States on October 23, 2006. Castillo-Perez alleges that there was an order for his removal from 2006, but he was never removed. The government indicated it had no evidence that Castillo-Perez had been removed.

At the hearing, Castillo-Perez was "afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear[ed] at the hearing, and to present information by proffer or otherwise." 18 U.S.C. § 3142(f). The United States called—and, through counsel, Castillo-Perez cross-examined—Special Agent Jacob Hudson with the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and Special Agent Matthew Burton with the Department of Homeland Security, Homeland Security Investigations ("HSI").

Hudson testified that, on May 2, 2022, law enforcement officers in Stokes County stopped a vehicle for speeding and failing to maintain a lane. The driver identified himself as Esequiel Castillo-Perez and produced a Mexican identification card. A canine sniffed the vehicle and alerted for narcotics. The law enforcement officers then searched the car and found a hidden compartment containing two semi-automatic pistols, a drum magazine, and multiple rounds of

2

ammunition, but no drugs. Law enforcement officers traced both firearms and determined that one of them had been reported as stolen. At the stop, Stokes County law enforcement officers asked Castillo-Perez if he knew about the firearms he denied it.

Mario Gomez was the registered owner of the car. In January of 2026, almost four years after the traffic stop, Hudson interviewed Gomez. Gomez told Hudson he had lent the car to Castillo-Perez to use for a construction project, and that no one else used it. Gomez told law enforcement that he had bought the vehicle new and was not aware of any hidden compartment or firearms in it.

Defense counsel asked Hudson whether Gomez runs a workshop that fixes vehicles, and Hudson responded that he did not know, and that Gomez was not investigated. Law enforcement also had not performed DNA or fingerprint analysis on the firearms.

Law enforcement officers arrested Castillo-Perez on April 13, 2026. Hudson participated in the arrest and read Castillo-Perez his *Miranda* rights. Castillo-Perez then told Hudson that he was not a United States citizen but had recently applied for citizenship. As part of the arrest, Hudson looked at Castillo-Perez's history and fingerprints and found that a 1999 notice to appear identified Castillo-Perez as "Jose Alfredo" rather than "Esequiel." Castillo-Perez told Hudson that Jose Alfredo was his brother's name. Finally, Hudson testified that he was not aware of Castillo-Perez missing any court appearances related to state charges lodged in 2022 related to the federal offense conduct.

Burton testified that, following Castillo-Perez's 2026 arrest, Hudson provided Burton with Castillo-Perez's name, birthday, and fingerprints, which Burton used to conduct a background check. Burton found that Castillo-Perez's fingerprints from his 2026 arrest matched fingerprints taken in connection with an arrest and notice to appear in Charleston, West Virginia in 1999, with the name Jose Alfredo Castillo-Perez used. At that time, Castillo-Perez had provided a sworn statement to immigration officers saying he was a citizen of Mexico. Castillo-Perez was then released on a recognizance bond.

Burton also found an order dated May 26, 2000 in which an immigration judge ordered Castillo-Perez removed from the United States in abstentia, as Castillo-Perez was not present for the hearing. On cross-examination, Burton testified that the notice to appear had listed a Pennsylvania address for the immigration court but did not list a date or time for the future hearing. Burton further testified that there was no confirmation that Castillo-Perez ever received notice of the date and time of his removal hearing, though the release order directed him to call a telephone number periodically and check in regarding those details. Finally, the May 2000 removal order remains in effect; thus, Burton testified that if the Court were to release Castillo-Perez, immigration officers could arrest and deport him.

The United States proffered the contents of the Report[2] which included the United States Probation Office's recommendation of release. According to the

---

[2] *See supra* at 2 (noting Castillo-Perez's objection to the Report).

Report, Castillo-Perez has lived in North Carolina for approximately 26 years. Since 2013, he has been the owner of E P Construction Services, LLC, which provides him with a yearly income of $500,000 to $1,000,000. His wife, two adult children, two of his brothers, and his step-daughter all live in North Carolina, as well.

Castillo-Perez's criminal history includes misdemeanor driving while impaired offenses in 1988 and 2004, the deportable alien offense from 1999, misdemeanor offenses related to driving without license in 2006, 2008, and 2019, and a misdemeanor for carrying a concealed gun in 2020. He is identified as Esequil Castillo-Perez in all of these convictions except the one in 1999.

II.    DISCUSSION

The Bail Reform Act ("BRA") provides four options for release or detention of a criminal defendant pending trial. *See* 18 U.S.C. § 3142(b—e). And, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception . . . . [T]he provisions for pretrial detention in the [BRA] fall within that carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Any "doubts regarding the propriety of release are to be resolved in favor of the defendant." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (citing *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985)).

The BRA establishes a two-step process for detention pending trial; first, the United States moves for detention on a specific statutorily-enumerated ground set

5

forth in Section 3142(f), and second, the Court holds a detention hearing, applying the evidence presented to the following factors:

(1) the nature and circumstances of the offense charged . . .;

(2) the weight of the evidence against the [defendant];

(3) the history and characteristics of the [defendant] . . .; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release.

18 U.S.C. § 3142(g).

In the present case, the offense alleged in the Complaint is a serious offense, as Congress enumerated it as a statutory basis for the United States to seek detention. The circumstances and the weight of the evidence, though, weigh towards release. Specifically, as set forth above, the offense conduct occurred almost four years prior to the return of the federal indictment and the record reflects no further encounters with law enforcement in the interim. And the circumstances of the offense conduct raise more questions than answers. Law enforcement officers conducted a traffic stop of the car Castillo-Perez was driving, which was not registered to him. When a K9 alerted to the car, officers conducted a probable cause search of the vehicle, and located, in a hidden compartment underneath the center front console, two firearms. No physical evidence tied either weapon to Castillo-Perez. Nor has law enforcement taken any steps to determine if it does.

And, though law enforcement did later interview the owner of the car, they did so approximately four years later. The owner denied knowledge of the firearms,

but one was reported as stolen, providing incentive for that person to lie about knowledge. Thus, the weight of the evidence is not overwhelming, though the Court assigns the least weight to this factor. *See United States v. Wilder*, 797 F. Supp. 3d 642, 648 (S.D.W. Va. 2025) ("Generally, the weight of the evidence is the least important factor because the consideration risks interfering with the presumption of innocence by instigating a pretrial determination of guilt.").

Regarding Castillo-Perez's history and characteristics, the record reflects that he has been present in United States for multiple decades, and his wife, two adult children, two of his brothers, and his step-daughter all live in North Carolina. He has a lengthy employment history. He has no other criminal convictions to speak of, aside from the misdemeanors identified above.

After considering the statutorily-prescribed factors enumerated above, as well as the information presented at the detention hearing, the Court does not find by clear and convincing evidence that Castillo-Perez presents a risk of danger to the community. There are conditions that could mitigate the risk to the community or any other person.

Risk of nonappearance is a different issue. Burton confirmed on direct and cross-examination that there was an outstanding immigration detainer on Castillo-Perez that ICE officers would likely effect upon his release from custody, meaning: he would not appear for proceedings in this matter. *See United States v. Villanueva-Martinez*, 707 F. Supp. 2d 855, 857 (N.D. Iowa 2010) ("Were it not for the threat of the defendant's deportation by ICE, he clearly would be eligible for

pretrial release by this court."). *Cf. United States v. Ramirez-Hernandez*, 910 F. Supp. 2d 1155, 1158–59 (N.D. Iowa 2012) (citing the "certainty" that defendants would be immediately taken into ICE custody and then promptly removed to Mexico in concluding there were no conditions of release under § 3142(c) that "would 'reasonably assure' the defendants' appearance at trial" on unlawful-reentry charges); *United States v. Ong*, 762 F. Supp. 2d 1353, 1363 (N.D. Ga. 2010) (citing the defendant's unlawful presence in and lack of ties to the United States, as well as evidence that he "would likely be removed from the United States and not allowed to re-enter," in concluding there were no conditions of release that would reasonably assure his appearance at trial).

However, while Section 3142(f)(2)(A) permits a detention hearing upon a showing of "serious risk of flight,"[3] Section 3142(e)(1) does not use that particular phrase, but rather "risk of nonappearance." And, as many courts have concluded, those phrases are not interchangeable; the first implies volition, whereas the latter does not. *See United States v. Santos-Flores*, 794 F.3d 1088, 1091–92 (9th Cir. 2015) (finding that the "district court erred in relying on the existence of an ICE detainer and the probability of Santos-Flores's immigration detention and removal from the United States" in ordering that he be detained pending trial in part because the "risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition"); *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111

---

[3] As the grand jury charged Castillo with a crime involving a firearm, the United States had a separate basis to move for a detention hearing pursuant to Section 3142(f)(1)(E).

(D. Minn. 2009) (finding the proposition that "any defendant encumbered by an ICE detainer must be detained pending trial" as inconsistent with the Bail Reform Act's "carefully crafted detention plan," and concluding that the "risk of nonappearance" referenced in § 3142 must "involve an element of volition" by the defendant); *United States v. Montoya-Vasquez*, No. 4:08cr3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009) (concluding that the term "'failure to appear' as used in the Bail Reform Act is limited to the risk that the defendant ... would fail to appear by virtue of his own volition, actions[,] and will" and that "the risk of removal by ICE, if cognizable at all under the Act, cannot be determinative of the question of a defendant's eligibility for release").

Thus, the issue before the Court is whether the risk of ICE deportation, standing alone, establishes that it is more likely than not that Castillo-Perez will not appear for pre-trial proceedings. If so, that would mean that every criminal defendant seeking release under the Bail Reform Act with an ICE detainer pending would face *de facto* detention. Under the language and structure of the Bail Reform Act, this cannot be.[4] *See, e.g.*, *United States v. Suastegui*, No. 3:18-MJ-00018, 2018 WL 3715765, at *3 (W.D. Va. Aug. 3, 2018) (finding such a "position is inconsistent with the Bail Reform Act's text and structure and that the likelihood of deportation before trial, while relevant to whether the individual Defendant

---

[4] And the United States concurs. In its briefing on this issue, it stated: "It the position of the government that the immigration order of deportation and detainer do not categorically establish under Section 3142(f) that defendant Castillo-Perez is a serious risk to flee and does not create an automatic bar to pretrial release." *See* Docket Entry 11, at 2.

poses a substantial flight risk if released under § 3142, is not sufficient for the Government to show that there are no conditions of release that can reasonably assure the Defendant's appearance as required").

First and foremost, "Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings, but instead set forth specific procedures to be followed when a judicial officer determines that a defendant is not a citizen of the United States or lawfully admitted for permanent residence, and such person may flee or pose a danger to any other person or the community[.]" *See id.* at *4 (internal quotations and citation omitted). Further, Section 3142 specifically defines categories of offenses where detention is presumed, and unlawful status in this country is not one of those. *See* 18 U.S.C. § 3142(e)(3).

It does not follow that consideration of the ICE detainer is off limits for the Court's consideration, though. That fact, like any other, can bear on the defendant's incentive to flee. *See United States v. Suastegui*, No. 3:18-MJ-00018, 2018 WL 3715765, at *5 (W.D. Va. Aug. 3, 2018) ("[T]he threat of being involuntary removed from one's family and local community is a consideration under 18 U.S.C. § 3142(g)(3)(A) that may well show that an individual defendant has significant incentive to absent himself from further proceedings to avoid possible imprisonment followed by deportation[.]"); *see also United States v. Reymundo*, 792 F. Supp. 3d 612, 624 (D. Md. 2025) (recognizing that "exposure to a potential prison sentence" provides "incentive to flee," as does the likelihood of another

10

deportation after imprisonment). "The Bail Reform Act, however, simply does not allow the court to substitute a categorical denial of bail based solely on the chance that the defendant may be deported in place of a proper individualized assessment of whether that individual defendant poses too high a flight risk to release pending trial." *See Suastegui*, 2018 WL 3715765, at *5.

As to this individual defendant, the facts are: 1) Castillo-Perez appears to have used his brother's name in an encounter with immigration officials 27 years ago; 2) since that time, in every encounter with law enforcement, Castillo-Perez has used his true name; 3) Castillo-Perez has had state charges pending against him since 2022 related to the federal offense conduct and has not once failed to appear in those proceedings; 4) immigration officials have been aware of Castillo-Perez's unlawful presence in the United States and specific location for years; and 5) Castillo-Perez has strong ties to the community. Finally, the United States Probation Office recommends release.

On this record, the Court cannot find that the presence of an ICE detainer creates an incentive to flee so strong that it meets the preponderance standard for risk of nonappearance, nor does Castillo-Perez's use of his brother's name in proceedings almost thirty years ago. *Compare with United States v. Coreas-Batres*, No. 5:18-cr-439, 2018 WL 10561963 (E.D.N.C. Dec. 4, 2018) (defendant attempted to flee officers at time of arrest); *United States v. Benitez-Elvira*, No. 1:14CR391-1, 2014 WL 6896142, at *2 (M.D.N.C. Dec. 5, 2015) (defendant used a

false name, social security, and travel documents while making multiple trips back and forth between the United States and Mexico).

Accordingly, the Court finds that there *is* a combination of release factors that would both assure the safety of others and the community, as well as Castillo-Perez's appearance in future proceedings in the case. He shall be released on the conditions set forth in the written order accompanying this memorandum opinion.

III.    CONCLUSION

**IT IS ORDERED** that Castillo-Perez shall be released on conditions set forth in the written order accompanying this memorandum opinion.

JoAnna Gibson McFadden
United States Magistrate Judge

April 30, 2026
Durham, NC

12